## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 09 2017, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT K.H.

Mark A. Delgado
Monticello, Indiana

ATTORNEY FOR APPELLANT J.K.

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of Jy.K. and J.K. (Minor Children), and

K.H. (Mother) and J.K. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

June 9, 2017

Court of Appeals Case No. 91A04-1612-JT-2832

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause Nos. 91C01-1602-JT-2, -3

**Crone, Judge.**

## Case Summary

K.H. ("Mother") and J.K. (Father) each appeal the trial court's orders involuntarily terminating their parental rights to their minor children Jy.K. and J.K. (collectively "the Children"). We affirm.

## Facts and Procedural History

The facts most favorable to the trial court's termination orders indicate that Jy.K. was born on April 6, 2011, and J.K. was born on April 8, 2014. Mother and Father are the biological parents of the Children. Before J.K. was born, in December 2013, the White County Department of Child Services ("DCS") first became involved with the family after receiving a report that Jy.K. was not receiving the care and services he needed. At age three, Jy.K. was not able to walk or speak, and he had rages and crying fits. DCS offered services and referred Mother and Father to First Steps which recommended that Jy.K. attend a developmental preschool. Jy.K. was eventually diagnosed with autism spectrum disorder.

Two months after J.K. was born, DCS received a report that Mother and Father had stopped sending Jy.K. to the developmental preschool. Mother expressed to caseworkers that she did not understand how to provide for Jy.K.'s needs and that she wanted DCS to remove him from her care. Caseworkers also discovered extremely unsafe conditions in the home. DCS assisted Mother and Father in obtaining community supports as well as services to address the conditions of the home.

[3] On October 2, 2014, DCS received a third report that Mother and Father were engaged in domestic violence in front of the Children. They were arguing over money and Mother threw a dish at Father striking him in the head. When caseworkers arrived, the home conditions were "way worse" than they had ever been in the past. Tr. 1 at 39. Caseworkers found food, trash, cigarette butts, tools, pieces of broken items and general clutter scattered throughout the home which made it difficult to walk around. The home was in complete "chaos" and "disorder." *Id*. The police were called and Mother was arrested and charged with felony battery, and Father was taken to the hospital. DCS removed the Children and placed them in foster care based on the unsafe and deplorable condition of the home, the significant decline in the condition of the home, the parents' inability to maintain the home, the Children's unhygienic conditions, Mother's failure to take prescribed medication,[1] and the domestic violence incident.

[4] On October 6, 2014, DCS filed petitions alleging that the Children were children in need of services ("CHINS"), and on October 22, 2014, the trial court issued an order adjudicating the Children as CHINS. On November 20, 2014, the trial court entered a dispositional decree and ordered that Mother and Father follow DCS recommendations, participate in services, maintain safe, stable, and suitable housing, maintain a legal and stable source of income, and submit updated budgets. A review hearing was held on March 16, 2015, and

---

[1] The record indicates that Mother was diagnosed with depression and prescribed medication to treat that condition.

the trial court found that Mother and Father continued "to struggle with retaining and implementing the parental skills they have learned." Ex. Vol. 7 at 57. The court recommended that the Children remain out of the home and that Mother and Father continue their participation in existing services.

[5] On December 15, 2015, the trial court changed the permanency plan to adoption after finding that Mother and Father were not in compliance with the Children's case plan and that they "inconsistently participated in home based case services and individual therapy." *Id.* at 69. On February 18, 2016, DCS filed petitions for involuntary termination of the parent-child relationship between Mother and Father and both Children. Following a factfinding hearing, the trial court entered its orders terminating Mother's and Father's parental rights. The court found the following relevant facts:[2]

> 1. Mother has at least six prior born children, all of which were removed from her care and her parental rights subsequently terminated.
>
> 2. In the most recent CHINS case [DCS] offered Mother and Father services and resources to address concerns, including, but not limited to, mental health services such as individual therapy; home based case management services to help with cleanliness of the home, budgeting, problem solving, healthy relationships and child development; supervised parenting time and frequent and child and family team meetings.

---

[2] We note that the trial court entered separate termination orders regarding each minor child. However, because the trial court's findings of fact and conclusions thereon in each order are essentially identical, we will cite to only one of the orders. We further note that the trial court refers to the parties by their full names. We use "Mother," "Father," "the Children," or each child's initials where appropriate.

3.  Although [Mother and Father] participated in the recommended services on a consistent basis, very little progress was made toward successful reunification.

4.  Mother and Father have continually exhibited financial instability throughout the case as a result of poor budgeting. Both continue to put wants over needs.

5.  Mother and Father have continually exhibited instability within their relationship.

6.  Neither parent has demonstrated knowledge of child development.

7.  Neither parent[] has exhibited any ability to problem solve with respect to day-to-day tasks such as washing clothes, hygiene, cleaning the home and transportation.

8.  Mother and Father exhibited the ability to clean the home; however, could never maintain it for any significant period of time.

9.  Mother and Father attended a few of the Children's physical therapy appointments with prompting from DCS; however, did not attend any of other medical appointments throughout the case.

….

15.  Both parents have demonstrated throughout the underlying CHINS case and during the [Termination of Parental Rights] period that they are unable to maintain the cleanliness of the home so as to provide a safe environment for [the Children].

16. Despite a variety of services provided in a variety of forms, Mother and Father have demonstrated little progress toward understanding child development, adequate budgeting, the importance of personal hygiene, cleanliness of the home, and problem solving.

17. Since Jy.K.'s removal, [he] has shown drastic improvement. He is now toilet-trained, and has learned to speak and continues to engage in physical therapy to help address underdeveloped muscles in his back and legs.

18. J.K., who was removed at five months of age has exhibited no physical or developmental delays.

....

30. Based on Mother's and Father's lack of progress and their refusal or inability to improve their capacity to provide proper care for the [Children], adoption and termination of parental rights is in [the Children's] best interests.

31. The [guardian ad litem] echoed that adoption and termination of parent rights was in [the Children's] best interests.

32. DCS' plan for [the Children] is adoption; this plan is satisfactory for [the Children's] care and treatment.

33. The current foster family wishes to adopt [the Children].

34. The [guardian ad litem] believes that the plan of adoption with the current foster family is satisfactory with respect to [the Children's] care and treatment moving forward.

Father's App. Vol. 2 at 42-46 (parenthetical citations omitted).

[6] Based upon these findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside the home will not be remedied by either parent; (2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the Children; (3) termination of the parent-child relationship between both parents and the Children is in the Children's best interests; and (4) DCS has a satisfactory plan for the care and treatment of the Children, which is adoption by their current foster family. Accordingly, the trial court determined that DCS had proven the allegations of the petitions to terminate parental rights by clear and convincing evidence and therefore terminated Mother's and Father's parental rights. Each parent now appeals.

## Discussion and Decision

[7] "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.* A petition for the involuntary termination of parental rights must allege in pertinent part:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

…

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[8]     "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard

of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[9] Mother and Father filed separate briefs on appeal but raise essentially the same issue. Both parents challenge the sufficiency of the evidence to support the trial court's termination of their respective parental rights. Specifically, both parents challenge the sufficiency of the evidence supporting the trial court's conclusions that there is a reasonable probability that the conditions that resulted in the Children's removal from and continued placement outside the home will not be remedied and that termination of each of their parental rights is in the Children's best interests.

## Section 1 – Sufficient evidence supports the trial court's conclusion that there is a reasonable probability of unchanged conditions.

[10] Mother and Father both contend that DCS failed to present clear and convincing evidence that there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home

will not be remedied.[3]  In determining whether there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013).  First, "we must ascertain what conditions led to their placement and retention in foster care."  *Id.*  Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'"  *Id.* (quoting *In re I.A.*, 934 N.E.2d 1132, 1134 (Ind. 2010) (citing *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997))).  In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'"  *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231).  "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change."  *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372

---

[3] Father also argues that DCS failed to prove that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the Children.  However, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence.  *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*.  Accordingly, we will address the sufficiency of the evidence with regard to only one of the three requirements.

(Ind. Ct. App. 2007), *trans. denied*. The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay. L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[11] Here, DCS removed the Children and placed them in foster care based on the unsafe and deplorable condition of the home, the significant decline in the condition of the home, the Parents' inability to maintain the home, the Children's unhygienic conditions, Mother's failure to take prescribed medication, and a domestic violence incident. The record indicates that at the time of the termination hearing, the conditions that led to the Children's placement and retention in foster care remained essentially unchanged. Both parents exhibited an inability and/or unwillingness to remedy the deplorable home conditions or to maintain any of the short-term progress made regarding safety issues for these young children. Despite ample services provided to both Mother and Father, neither parent has benefited from services and they continue to fail to demonstrate any ability to problem-solve with respect to day-to-day tasks such as washing clothes, personal hygiene, cleaning the home, or transportation. Both parents also continue to exhibit financial instability, and neither parent has demonstrated any significant progress toward understanding child development or any interest in attending to the medical and developmental needs of Jy.K. This evidence regarding Mother's and Father's habitual patterns of conduct and their longstanding inability to provide a safe

environment for the Children supports a finding that there exists no reasonable probability that conditions will change.

[12] Neither parent disputes that the conditions that led to the Children's removal remain unchanged, but both parents urge that they each can or will change the conditions in the future. Mother maintains that she has made good-faith efforts to "remove herself from the domestic violence relationship" with Father and further that she has never been "given a substantial opportunity to show that she [can] provide for the minor children" as the sole custodial parent. [4] Mother's Br. at 11, 13. Similarly, Father argues that he is no longer in a relationship with Mother and that "it is reasonable to expect that his parenting will improve now that he and Mother are no longer together." Father's Br. at 15. However, at the time of the termination hearing, even though they claimed to not be in a relationship, Mother and Father continued to live together. We fail to see how their respective parenting deficiencies are likely to change under such circumstances. Sufficient evidence supports the trial court's conclusion that there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied.

---

[4] As indicated in the trial court's findings, Mother's parental rights have also been terminated to at least six prior born children (three termination proceedings in Minnesota, one in Illinois, and two in Indiana). The termination orders regarding those children were admitted into evidence and are part of our record on appeal. Our review of those orders reveals Mother's long and tragic history of parenting deficiencies, with one court aptly describing her as "palpably unfit." Ex. Vol. 7 at 183.

# Section 2 – Sufficient evidence supports the trial court's conclusion that termination of both Mother's and Father's parental rights is in the Children's best interests.

[13] Mother and Father next assert that the evidence does not support the trial court's conclusion that termination of their parental rights is in the Children's best interests. In considering whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id.* The trial court need not wait until the child is irreversibly harmed before terminating parental rights. *Id.* The testimony of service providers may support a finding that termination is in the child's best interests. *Id.*

[14] Here, Family Case Manager Jessica Walters testified that despite DCS's consistent efforts in providing services to aid these parents, Mother and Father seemed to lack "effective problem solving skills" and had continually failed to follow through with improving home conditions, meeting the medical and educational needs of the Children, or meeting the mental health needs of Mother. Tr. 1 at 69. After seeing virtually no progress for more than a year, and due to each parent's unwillingness to effectively participate in or accept offered services, Walters opined that she did not believe that reunification

would be possible and that adoption by the current foster family was the "best option" moving forward. *Id.* at 96.

[15] Likewise, Guardian Ad Litem Rebecca Trent observed that Mother's and Father's biggest obstacle toward reunification with the Children is their lack of understanding and their failure to follow "through with things." Tr. 2 at 115. Mother seems unable to learn even the most basic skills regarding cleanliness and hygiene and Father has "significant resistance" to accepting that "there may be a better way to do something or something that might improve the situation." *Id.* at 116. "Conflict issues" between Mother and Father also interferes with each of their abilities to parent the Children. *Id.* at 117. Based upon "the length of time this case had gone on, the many different ways we have tried to come up with ideas to improve the situation," and the parents' lack of success in addressing the issues that led to removal of the Children, Trent opined that termination of parental rights is in the Children's best interests. *Id.* at 118. This evidence is sufficient to support the trial court's conclusion that termination of both Mother's and Father's parental rights is in the Children's best interests. Accordingly, the trial court's termination orders are affirmed.

[16] Affirmed.

Baker, J., and Barnes, J., concur.